UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES C. BARNUM JR. | CIVIL ACTION |
| VERSUS | NO. 24-2482 |
| THE CITY OF NEW ORLEANS, *et al.* | SECTION M (5) |

**ORDER & REASONS**

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants the City of New Orleans ("the City"), along with Officer Shantia McCormick, Officer Yolanda M. Jenkins, Officer Sam Dupre, Officer Shawn H. Johnson, Officer Darien M. Crochet, and Officer Anthony C. Edenfield, all of the New Orleans Police Department ("NOPD") (the officers are collectively referred to as the "NOPD Defendants," and together with the City as "Defendants").[1] Plaintiff James C. Barnum Jr., who is proceeding *pro se*, responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

## I. BACKGROUND

This case concerns allegations of police officer misconduct. Barnum alleges that the City has "informal policies and procedures" that led to "false arrest, false imprisonment, [and] unlawful search and seizure in violation of the Fourth and Eighth Amendments of the United States

[1] R. Doc. 16.

[2] R. Doc. 19. A court liberally construes a *pro se* party's filings and those filings are held "to less stringent standards than formal pleadings drafted by lawyers." *United States v. Davis*, 629 F. App'x 613, 618 (5th Cir. 2015) (quotation omitted). Nevertheless, a *pro se* plaintiff is still claiming the benefit of the courts and must adhere to its procedures and abide by substantive law. *See Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (observing that a *pro se* plaintiff is not "exempt ... from compliance with the relevant rules of procedural and substantive law"). "A court will squint at *pro se* filings to discern what may be there – but it will not see things that are not there." *Brown v. Brown*, 2025 WL 1811326, at *3 (N.D. Tex. July 1, 2025) (citing *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P*, 735 F. App'x 848, 851 (5th Cir. 2018) ("[T]here are limits on how far we will go to assist *pro se* plaintiffs.")).

Constitution."[3] To that end, Barnum claims that the NOPD Defendants "targeted and framed [him] for crimes he did not commit" by using fabricated police reports and charges "[a] conspiracy to deprive [him] of his [c]ivil [r]ights because of his neighbors, Christopher Nunziato and Jane Doe," who both live on Fern Street.[4] Generally, Barnum claims that the NOPD Defendants are improperly using a protective order, which prohibits him from being present at his mother's house on Fern Street, to arrest him at the behest of her neighbors.[5]

To that end, Barnum claims that he was unlawfully arrested by McCormick, with Jenkins's authorization, on October 15, 2023.[6] The NOPD "gist sheet" for the incident explains that the victim, Walter Stevenson, another neighbor, stated that, two weeks prior, Barnum asked to use Stevenson's bicycle, which Barnum refused to return to Stevenson and had modified without permission.[7] McCormick viewed video footage of Barnum having possession of Stevenson's bicycle on October 13 and 14, 2023.[8] Plaintiff alleges that this arrest was unlawful because there was no protective order and the charges were refused by the district attorney's office.[9]

Next, Barnum alleges that he was unlawfully arrested on December 1, 2023, by an unspecified officer based on an affidavit for arrest warrant signed by Johnson, with Dupre's authorization, on October 29, 2013.[10] The affidavit for arrest warrant states that Johnson was dispatched to Fern Street where he met with Nunziato, the neighbor of Barnum's mother, who stated that Barnum disturbs him by playing loud music and that there was a protective order against Barnum prohibiting him from being at his mother's house on Fern Street.[11] Johnson spoke to

[3] R. Doc. 4 at 6-7.
[4] *Id.* at 7.
[5] *Id.*
[6] *Id.*
[7] R. Doc. 4-1 at 2.
[8] *Id.*
[9] R. Doc. 4 at 7-8.
[10] *Id.* at 8.
[11] R. Doc. 16-3 at 1.

Gloria Barnum, plaintiff's mother, who stated that Barnum was living with her because his apartment was uninhabitable.[12] Johnson explained to Gloria Barnum that plaintiff could not be at her house because she had a non-expiring protective order against him.[13] She stated that she did not know that the protective order did not expire.[14] Johnson verified the existence of the non-expiring protective order that was issued on August 30, 2022.[15] Yet, Barnum again claims that the arrest was unlawful and that a magistrate judge ordered his release.[16]

Barnum then alleges that on February 13, 2024, Crochet, authorized by Edenfield, and in concert with Nunziato, fabricated an affidavit for his arrest.[17] The affidavit, signed by Crochet, states that Crochet was dispatched to Fern Street on February 13, 2024, to respond to a simple battery.[18] When he arrived he encountered Nunziato, who told Crochet that Barnum had punched him in the face with a closed fist because Nunziato had reported Barnum to the police for stealing bicycles.[19] On February 17, 2024, McCormick arrested Barnum based on this affidavit.[20] Barnum claims that the district attorney later refused the charges and he was released.[21]

Lastly, Barnum alleges that on May 15, 2024, his mother's neighbor, referred to as "Jane Doe," testified at Civil District Court in New Orleans "that she has contacted City Hall, NOPD Officers, and Judges for them to get rid of plaintiff for her."[22]

---

[12] *Id.* at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] R. Doc. 4 at 8.
[17] *Id.* at 8-9.
[18] R. Doc. 4-1 at 14-15.
[19] *Id.* at 14.
[20] R. Doc. 4 at 9.
[21] *Id.*
[22] *Id.*

## II. PENDING MOTION

Defendants move to dismiss Barnum's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[23] The NOPD Defendants argue that they are entitled to qualified immunity because Barnum has not shown any violation of rights clearly established by the Fourth Amendment.[24] Because Barnum's complaint does not articulate any difference between his claims for alleged unlawful arrest, imprisonment, and search and seizure, the NOPD Defendants treat them all as unlawful-arrest claims related to the arrests that occurred on October 15, 2023, December 1, 2023, and February 17, 2024.[25] The NOPD Defendants argue that McCormick had probable cause to arrest Barnum on October 15, 2023, for the unlawful use of a movable because the victim stated that Barnum took his bicycle and Barnum admitted that he had the item and refused to give it back.[26] Next, the NOPD Defendants assert that an officer had probable cause to arrest Barnum on December 1, 2023, because Johnson had confirmed the existence of the non-expiring protective order that Barnum had violated and there is no allegation that Dupre signed or prepared the affidavit.[27] Further, the NOPD Defendants contend that McCormick had probable cause to arrest Barnum on February 17, 2024, based on Crochet's affidavit and the subsequent warrant issued for simple battery related to the February 13, 2024 incident between Barnum and Nunziato.[28] Finally, the City argues that Barnum fails to state a *Monell* claim because he has not alleged any violations of the Fourth or Eighth Amendments, nor has he alleged facts supporting his allegation that the City had an unlawful practice or policy condoning unlawful arrests or deliberate indifference.[29]

---

[23] R. Doc. 16.
[24] R. Doc. 16-1 at 5-10.
[25] *Id.* at 6.
[26] *Id.* at 7-8.
[27] *Id.* at 8-10.
[28] *Id.* at 10.
[29] *Id.* at 11-13.

In opposition, Barnum argues that all of the arrests were unlawful because the relevant protective order was expired.[30] He also asserts that he never admitted to McCormick in October 2023 that he had the bicycle and refused to return it.[31]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate

---

[30] R. Doc. 19 at 1-3.
[31] *Id.* at 2.

to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th

Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Barnum's Claims Against the NOPD Defendants**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Here, Barnum brings § 1983 claims against the NOPD Defendants in their individual capacities for unlawful arrest. The officers argue that they are entitled to qualified immunity.

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The defense "provides government officials with immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smith v. Lee*, 73 F.4th 376, 381 (5th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). It "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Qualified immunity requires a two-step analysis. First, courts ask "whether the plaintiff has alleged a violation of a constitutional right." *Smith*, 73 F.4th at 381 (citing *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). Then, "[i]f so, [courts ask] whether the right was clearly established at the time of the violation." *Id*. (citing *Cooper*, 844 F.3d at 522). "Both questions are matters of law." *Id*. Generally, to satisfy the "clearly established" prong, a plaintiff must identify a case, or body of relevant case law, in which an officer acting under similar circumstances was held to have violated the Constitution. *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). In other words, "the unlawfulness of the challenged conduct must be beyond debate." *Id.* (quotation omitted). Hence, courts "cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the [right at issue], and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.* at 345.

The Fourth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures.[32] "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (internal quotation marks omitted) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). An arrest clearly qualifies as a seizure within the meaning of the Fourth Amendment.

"As a baseline, 'the constitutional claim of false arrest requires a showing of no probable cause.'" *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (alteration omitted) (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). Probable cause means that there is "'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018)). In other words, a reasonable officer must be able to believe that the suspect had committed a crime. *Id.* (citing *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) ("Courts must look to the totality of the circumstances and decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, demonstrate a probability or substantial chance of criminal activity." (alteration and emphasis omitted))).

Barnum alleges that all three arrests – those on October 15, 2023, December 1, 2023, and February 17, 2024 – were made without probable cause because the officers and their supervisors falsified the affidavits supporting the arrests and warrants. "In *Franks v. Delaware*, the Supreme Court held that an officer violates the Fourth Amendment if he deliberately or recklessly provides

[32] Barnum has not alleged any facts to support an Eighth Amendment violation related to cruel and unusual punishment.

false information necessary to secure an arrest warrant." *Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To prevail on a *Franks* claim, a plaintiff must show that: "'(1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause.'" *Id.* (quoting *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021)). An officer who did not prepare the actual affidavit can be held liable for a *Franks* violation if he or she directed the inclusion of false information in the affidavit or supplied false information for the purpose of compiling a warrant affidavit. *Hughes*, 100 F.4th at 620 (citations omitted).

Here, Barnum has not stated a *Franks* claim against any of the NOPD Defendants. He generally alleges that the affidavits were false because, in his view, the protective order was invalid or nonexistent, and he says now that he never admitted that he had the bicycle. However, the public records (including those attached to Barnum's complaint), which a court may consider on a motion to dismiss, show that each affidavit was supported by probable cause. As to the October 15, 2023 arrest, even if the affidavit did not state that Barnum told the officer he had the bicycle, the rest of the affidavit explaining the victim's statements, and referencing a video showing that Barnum possessed the bicycle in the previous two days, supports the arrest affidavit for the charge of unauthorized use of a movable. There is no indication that McCormick falsely reported the victim's statements or lied about the video footage showing Barnum with the item. As to the December 1, 2023 arrest, the affidavit underlying the warrant states that Johnson verified in the public record the existence of the non-expiring protective order. Barnum offers nothing to contradict Johnson's statement that he did the relevant research to support the affidavit. Finally,

as to the February 17, 2024 arrest, Barnum does not dispute the facts stated in the affidavit regarding his punching Nunziato, which are sufficient to support probable cause for the charge of simple battery. In sum, Barnum has not stated a Fourth Amendment claim against any of the NOPD Defendants because all three arrests were based on probable cause.

**C. Barnum's Claim Against the City**

A § 1983 claim brought against a municipality is analyzed under the *Monell* doctrine. In *Monell*, the Supreme Court held that a governmental entity is liable under § 1983 only when the entity itself caused the constitutional violation at issue. 436 U.S. at 694. To succeed on a *Monell* claim (*i.e.*, the claim against the governmental entity), the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quotation omitted). "A municipality cannot be held liable under a theory of *respondeat superior*." *York v. Welch*, 2024 WL 775179, at *2 (5th Cir. Feb. 26, 2024) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)). Thus, "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quotation and alterations omitted).

Barnum cannot maintain a *Monell* claim against the City because, as discussed above, there was no Fourth Amendment violation. As the Fifth Circuit has said, "[i]t is well established that to recover against a municipality under § 1983, a plaintiff must allege and establish that he sustained a deprivation of a constitutional or other federally protected right because of some official policy, practice, or custom of that governmental entity." *Rusanowsky v. City of Dall.*, 2025 WL 855317, at *5 (5th Cir. Mar. 19, 2025) (quotation omitted). "Without a predicate constitutional violation,

there can be no *Monell* liability." *Id.* (quotation and alteration omitted). Thus, because Barnum cannot show that he suffered a constitutional violation from any false arrest, his *Monell* claim against the City must be dismissed.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim (R. Doc. 16) is GRANTED, and Barnum's claims against Defendants are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 16th day of July, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE